IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:18-cv-00162-MR

| | |
|---|---|
| MARCUS A. THORPE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| ANITA J. GOWANS, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment [Doc. 58].

I. BACKGROUND

The Plaintiff Marcus A. Thorpe, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Alexander Correctional Institution ("Alexander").[1]

The Plaintiff's Verified Complaint passed initial review on (1) claims of excessive force against correctional sergeants Derrick Copeland and Joshua

---

[1] The Plaintiff filed the Complaint while he was incarcerated at the Polk Correctional Institution, and he is now incarcerated at the Marion Correctional Institution. See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1041028&searchLastName=thorpe&searchFirstName=marcus&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed Oct. 22, 2021); Fed. R. Evid. 201.

T. Quinn and correctional officers Phillip A. Carswell, David J. Davis, Christopher Johnson, Curtis D. Sauberan, John F. Snyder, David A. Stephens, Robert J. Virtue, and Nathan E. Wyatt; and (2) a claim of deliberate indifference to a serious medical need against nurse Anita J. Gowans ("Nurse Gowans"). The Plaintiff seeks compensatory and punitive damages. [Doc. 1: Verified Complaint at 4].

Defendants Gowans, Copeland, Davis, Johnson, Quinn, Sauberan, Snyder, Virtue, and Wyatt have now filed a Motion for Summary Judgment.[2] [Doc. 58]. The Court notified the Plaintiff of the opportunity to respond to the Motion and to present evidence in opposition pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 63: Roseboro[3] Order]. The Plaintiff filed a Response and exhibits.[4] [Doc. 66]. The Defendants did not reply, and the time to do so has expired. This matter is ripe for disposition.

---

[2] Defendants Carswell and Stephens were served with the Complaint, but they have not answered the Complaint or filed dispositive motions. [See Docs. 15 at 1-2: Stephens Summons; Doc. 16 at 1-2: Carswell Summons].

[3] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[4] The Plaintiff's Response and handwritten notations on his exhibits are not notarized or otherwise verified. The Court, therefore, will rely only on the Plaintiff's Verified Complaint in reciting the Plaintiff's forecast of evidence.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

3

"depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.  FACTUAL BACKGROUND

Viewing the parties' forecasts of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

On the afternoon of November 26, 2015, the Plaintiff assaulted Captain Raymond Hamilton[5] in the hallway outside the dining hall by physically striking Hamilton's glasses and the top of Hamilton's head. [Doc. 1: Verified Complaint at 3; Doc. 60-1: Hester Decl. at ¶ 11(a)]. Captain Hamilton used hands-on force to try to gain control of the Plaintiff, but the Plaintiff physically resisted and twisted, and both of them went to the ground. [Doc. 1: Verified Complaint at 3; Doc. 60-1: Hester Decl. at ¶ 11(b)-(c)]. Once on the ground, the Plaintiff was positioned on top of Hamilton, and he continued to repeatedly strike Hamilton. [Doc. 60-1: Hester Decl. at ¶ 11(d)]. A Code 7 was called for assault on an officer. [Id. at ¶ 11(e)-(f)].

Officer Sauberan responded and assisted Captain Hamilton by attempting to gain control over the Plaintiff by using hands-on force, but the Plaintiff continued to resist. [Id. at ¶ 11(g)]. Another officer then responded and administered OC pepper spray to the Plaintiff, but this was ineffective. [Id. at ¶ 11(f)]. Numerous other staff members responded and directed other inmates away from the incident. [Id. at ¶ 11(i)].

Officers Virtue and Stephens and Sergeant Quinn then used hands-on force to assist the already-involved staff with placing handcuffs and leg

---

[5] Captain Hamilton is not a Defendant in this case.

restraints on the Plaintiff, as the Plaintiff continued resisting. [Id. at ¶ 11(j); Doc. 60-6: Quinn Decl. at ¶ 5(b)-(c)]. Once the Plaintiff was restrained, he was still resisting and refused to walk to restrictive housing, so Sergeant Quinn ordered staff to carry the Plaintiff. [Doc. 60-6: Quinn Decl. at ¶ 5(d)-(e)]. Sergeant Copeland and Officers Virtue, Carswell, Johnson, Wyatt, Davis, Snyder, and others used hands-on force to carry the Plaintiff to restrictive housing. [Doc. 60-1: Hester Decl. at ¶ 11(k)]. Each staff member was responsible for a "quadrant" of the Plaintiff. [Doc. 60-6: Quinn Decl. at ¶ 5(e)]. He was not carried by the restraints and continued to struggle as he was being carried. [Doc. 60-1: Hester Decl. at ¶ 12(i); Doc. 60-6: Quinn Decl. at ¶ 5(e); see also Doc. 1: Verified Complaint at 3 (Plaintiff was lifted by his arms and legs)].

Once at restrictive housing, the Plaintiff was forcefully thrown inside a shower cell, landing on his back with his hands still cuffed behind his body, resulting in the fracturing of his left hand. [Doc. 1: Verified Complaint at 3]. The Plaintiff was then "maliciously beaten by the same … correctional officers" in the shower. [Id. at 3-4].

The Defendants have submitted video files containing footage from prison surveillance cameras and handheld cameras. [Doc. 60-5]. This footage reflects the incidents leading up to the Plaintiff being placed in

6

restraints and being carried into the shower cell in restrictive housing. It does not, however, show what happened when the Plaintiff was in the shower cell.

The Plaintiff was searched, afforded the opportunity to take a decontamination shower, and placed in full mechanical restraints. [Doc. 60-1: Hester Decl. at ¶ 11(m); Doc. 60-6: Quinn Decl. at ¶ 5(g)-(h), (j)]. Defendant Quinn noticed no physical injuries, and the Plaintiff did not complain of any injuries at that time. [Doc. 60-6: Quinn Decl. at ¶ 5(j)]. He was also examined by a nurse, who determined that he had no injuries. [Doc. 60-8: Medical Records at 45-46].

The Plaintiff's restraints were checked by nurses several times on November 26 and 27, 2015. [Doc. 60-7: Gowans Decl. at ¶ 8(b)]. Handheld videos of these checks reveal no obvious injuries or swelling to the Plaintiff's hands. [Doc. 60-5: Handheld Video Nos. 1, 2, 4, 5]. In the midnight check on November 27, the Plaintiff can be seen flexing his left hand at 00:56. [Doc. 60-5: Handheld Video No. 4]. According to the Plaintiff, these videos were taken "before any severe swelling had taken place." [Doc. 1: Verified Complaint at 4]. By November 27, the Plaintiff's hand and wrist were "extremely swollen" and he was in tremendous pain." [Id. at 4].

The Plaintiff declared a medical emergency for pain in his left hand and wrist during the early morning hours of December 1, 2015. [Id.]. Nurse

7

Gowans came to see Plaintiff at his cell shortly thereafter, took his vitals, and asked him what was wrong. [Id.; Doc. 60-7: Gowans Decl. at ¶ 8(c)(i)]. The Plaintiff explained "what the officers had done to [him]" and showed her the swelling and bruising to his left hand and wrist. [Doc. 1: Verified Complaint at 4, 6]. Nurse Gowans noted some redness and swelling to the Plaintiff's left hand and left foot, but was unable to determine the cause. [Doc. 60-7: Gowans Decl. at ¶ 8(c)(iii)]. Nurse Gowans believed that the swelling could have been some kind of allergic reaction, so she authorized the use of diphenhydramine, as well as ibuprofen for the Plaintiff's complaints of pain.[6] [Id. at ¶ 8(c)(v)-(vi)]. There was nothing to indicate to Nurse Gowans that Plaintiff was seriously injured, or even that he had a minor injury that required additional care. [Id. at ¶ 8(c)(vii)]. However, Nurse Gowans told the Plaintiff to return to sick call if his condition did not improve. [Id. at ¶ 8(c)(viii)]. This was Nurse Gowans' only encounter with the Plaintiff; she did not see him for another medical encounter after this incident. [Id. at ¶ 8(c)(i), (ix)].

On January 14, 2016, Plaintiff was transferred to Polk C.I. [Id.]. He submitted a sick call about his hand on January 15, received an x-ray, and was provisionally diagnosed with a fracture to the fourth metacarpal on

---

[6] According to Plaintiff, he began questioning Defendant Gowans' judgment and she replied that she is not a doctor. [Doc. 1: Complaint at 6].

8

January 28, 2016. [Id.; Doc. 60-7: Gowans Decl. at ¶ 8(g), (j)]. A fracture of a metacarpal bone is known as a "Boxer's Fracture" because it can be caused by striking an object with a closed fist. [Doc. 60-7: Gowans Decl. at ¶ 10]. A fracture of a metacarpal "is not easily diagnosable, and is not generally a major injury unless it is severely displaced such that the displacement is visible or the fracture is compound – i.e. the skin is broken." [Id. at ¶ 9]. The Plaintiff did not present with either of these severe conditions. [Id.]. Based on the medical records, Nurse Gowans cannot determine when or how Plaintiff fractured his metacarpal bone. [Id. at ¶ 10]. Polk C.I.'s medical staff sent the Plaintiff to an orthopedic specialist who determined that Plaintiff's left hand was broken, and recommended treatment.[7] [Doc. 1: Complaint at 7].

## IV. DISCUSSION

### A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. Amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312,

---

[7] Records indicate that Plaintiff's ultimate diagnosis may have been for a fracture of the fifth, rather than fourth, metacarpal. [Doc. 60-8: Medical Records at 6] (Feb. 25, 2016 Clinical Encounter – Admin. Note by Mark A. Downs PA, requesting Utilization Review approval for an orthopedic specialist for a displaced fifth metacarpal fracture).

9

319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320. "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

The Defendants have presented an undisputed forecast of evidence that the Plaintiff made a sudden physical attack on Captain Hamilton, went to the ground as he continued to assault Captain Hamilton, continued to struggle as officers attempted to subdue him, and then was carried away by his arms and legs after he continued to resist. No reasonable jury could find

that the Defendants' use of force in this context was excessive. However, the Plaintiff has presented a forecast of evidence from which a reasonable jury conclude that the Defendants used excessive force by throwing the Plaintiff into the shower stall and beating him, resulting in injuries. Accordingly, the motion for summary judgment with respect to the Plaintiff's claim for excessive force against Defendants Copeland, Davis, Johnson, Quinn, Sauberan, Snyder, Virtue, and Wyatt is denied.

## B. Deliberate Indifference to a Serious Medical Need

To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental

11

fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer v. Brennan, 511 U.S. 825, 825 (1994).

Here, the undisputed forecast of evidence establishes that the only occasion on which Nurse Gowans provided Plaintiff with medical care was on December 1, 2015, after the Plaintiff had declared a medical emergency. However, the Plaintiff has failed to forecast any evidence that he had a serious medical need at the time of his encounter with Nurse Gowans or that she was deliberately indifferent to such a need.

Even assuming that the Plaintiff's metacarpal was, indeed, fractured at that time, such an injury is not easily diagnosed and generally is not a major injury unless it is severely displaced or is a compound fracture, neither of which was the case was present for the Plaintiff. [Doc. 60-7: Gowans Decl. at ¶ 9]. Plaintiff has forecast no evidence whatsoever that he had a serious medical need at the time of his interaction with Nurse Gowans.

While the Plaintiff complains that Nurse Gowans provided inadequate care by providing Benadryl for a possible insect bite, rather than acknowledging that he was injured in the use of force incident, a mistaken diagnosis or even medical negligence cannot serve as a basis for a deliberate indifference claim. Even if Nurse Gowans was mistaken about an allergic reaction, she did not ignore the Plaintiff's pain. She provided him

with a five-day supply of ibuprofen and instructed him to return to sick call if his condition did not improve. The Plaintiff has failed to forecast any evidence suggesting that this treatment was so grossly inadequate to be intolerable to fundamental fairness.

Accordingly, Nurse Gowans will be granted summary judgment as to the Plaintiff's claim that she was deliberately indifferent to a serious medical need.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted in part and denied in part. The claim of deliberate indifference to a serious medical need against Nurse Gowans is dismissed. This case will proceed to trial[8] against Defendants Copeland, Davis, Johnson, Quinn, Sauberan, Snyder, Virtue, and Wyatt for the use of excessive force.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 58] is **GRANTED IN PART** and **DENIED IN**

---

[8] The Plaintiff will proceed to trial *pro se*. [See Misc. Case No. 3:19-mc-00013-MR Doc. 4: Order of Suspension of Prisoner Assistance Program].

13

**PART**. Specifically, the Motion is **GRANTED** with respect to the Plaintiff's claim of deliberate indifference to a serious medical need against Defendant Gowans, and that claim is dismissed. The Motion is **DENIED** with respect to the Plaintiff's claim for excessive force against Defendants Copeland, Davis, Johnson, Quinn, Sauberan, Snyder, Virtue, and Wyatt.

The Clerk is respectfully directed to mail a copy of this Order to the Plaintiff at the Marion Correctional Institution, 355 Old Glenwood Road, Marion NC 28752; mail a copy of this Order to Defendants Carswell and Stephens at their sealed addresses [see Doc. 12]; and terminate Defendant Gowans as a Defendant.

**IT IS SO ORDERED.**

Martin Reidinger
Chief United States District Judge